UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

FILED
FEB 17 2010

CLERK

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| KAREN CHRISTENSEN, as Special Administrator of the Estate of Christopher Christensen, Deceased; and KAREN CHRISTENSEN, individually,<br><br>Plaintiff,<br>vs.<br><br>CONNIE NELSON, in her individual capacity,<br><br>Defendant. | CIV 08-4122<br><br>SUMMARY JUDGMENT MEMORANDUM OPINION AND ORDER |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Plaintiff, Karen Christensen, (Plaintiff) as Special Administrator of the Estate of Christopher Christensen, Deceased, (Christopher), and in her individual capacity, brings in her Amended Complaint a cause of action against Defendant Connie Nelson (Defendant) under 42 U.S.C. § 1983 for violation of Christopher's constitutional rights under the Eighth and Fourteenth Amendments to the Constitution of the United States, a survival cause of action based on negligence under state law, a wrongful death cause of action under state law, and negligent infliction of emotional distress under state law. Doc. 6. Pending before this Court is Defendant's Motion for Summary Judgment on all of Plaintiff's causes of action.[1] Doc. 20. The motion is granted for the reasons discussed below.

Principles of Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to

---

[1]The parties in their Form 52 Report agreed to bring immunity issues to the Court pursuant to an initial dispositive motion.

the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273-74 (8th Cir. 1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## FACTUAL BACKGROUND

The following facts, viewed in the light most favorable to the nonmoving party, Plaintiff, constitute the factual background of this case. On July 13, 2007, sixteen-year-old Christopher was adjudicated by a circuit court judge in State Court as a juvenile delinquent after being present with others juveniles who shot out street lights in Vermillion, South Dakota, with a BB gun. The judge ordered Christopher to complete 90 days of supervised probation, pay restitution of $137.77 and perform 20 hours of community service. Defendant, who has been a State Court Services Officer since 1978, was assigned to Christopher's case. Defendant met with Christopher, his mother who is the Plaintiff in this action, and Christopher's grandmother after the July 13, 2007 hearing to discuss the conditions of probation which were approved by the judge. At that time community service options were discussed and both Plaintiff and Defendant were going to check out the different options. Within a couple of days Defendant contacted Plaintiff regarding the option of Christopher working at the Clay County Courthouse.

Christopher had suffered from asthma since he was a toddler. Although Christopher had been at times involved in and active in organized and unorganized sports, he had previously been hospitalized on occasion because of his asthma. Dust, oak wood and wheat were some of the things

that would trigger Christopher's asthma attacks. Since April of 2006 Christopher had an inhaler in his possession at all times.

Defendant denies being told on July 13, 2007, that Christopher had asthma, and denies ever knowing prior to his death that Christopher had asthma. Defendant's position on this point is disputed by both Plaintiff and Christopher's grandmother. Plaintiff testified at her deposition that she advised Defendant that Christopher was prevented from getting a part-time job walking the bean fields because of his asthma and the impact "herbicides and other things" would have on the asthma. Plaintiff also testified that she told Defendant that because of Christopher's asthma he would be carrying his inhaler on him at all times and that she wanted Defendant to know that if Christopher pulled out his inhaler he was not in possession of some other kind of drug. Christopher's grandmother testified at her deposition that her daughter, Plaintiff, advised Defendant at the July 13, 2007 meeting that Christopher carried an inhaler in his pocket due to his asthma. Christopher's grandmother further testified that Defendant looked at them and nodded her head in acknowledgment after being advised that Christopher was an asthmatic. The Court on a motion for summary judgment must consider the evidence in a light most favorable to the non-moving party, that being the Plaintiff. Accordingly, the Court does for the purpose of this motion resolve the evidence conflict in favor of the Plaintiff and does consider that for the purpose of deciding this motion, that the Defendant knew of the nature and extent of Christopher's asthma condition.

After being advised by the Clay County State's Attorney's office that boxes needed to be moved from the office, Defendant advised Christopher and Plaintiff that Christopher could move those boxes to satisfy some of the hours of his community service requirement. Christopher then performed community service work at the Clay County Courthouse on July 19, 20, 26, and 27, 2007. Christopher worked with the janitor, Joan Downey, doing such things as cleaning gutters and window wells and taking recycling to the recycling center. The janitor had been asked by the auditor to clean the attic of the Clay County Courthouse. On July 26, 2007, Christopher and two other juveniles went through furniture and rearranged boxes in the attic. They then moved boxes from the Clay County State's Attorney's office to the courthouse attic.

One of the boys who performed community service with Christopher on July 26 and July 27, 2007, at the courthouse stated in his affidavit that Defendant advised them on July 26 that they would

be helping the janitor clean the courthouse attic that day. This boy described the attic floor as being covered with a thick layer of dirt and with all of the boxes and furniture in the attic being covered with dust. In addition, this boy saw dead bats in the attic. Defendant had been in the attic within a year of the time the boys were sent there to work and had observed that the attic was dusty. The boys were each provided with a mask to wear over their mouths and gloves to wear while they were in the attic. Shortly after going into the attic the janitor began sweeping dirt from the floor into piles while Christopher and the boy were moving furniture and boxes in the attic. Christopher and the boy also picked up some of the dirt and garbage from the attic floor and took it to the dumpster. They worked in the attic a couple of hours.

The boy who performed community service with Christopher described the air quality in the attic as being bad and stated that everyone cleaning in the attic had to take frequent breaks and leave the attic because of the dust in the attic. This boy stated in his affidavit that the inside of the masks worm by him and Christopher had dust inside them and that both boys had dust in their mouths and noses. The boy also stated that they both blew "black stuff" out of their noses. This boy also stated in his affidavit that both he and Christopher complained to the janitor about the dust in the attic and also told Defendant about the dust in the attic. The janitor testified in her deposition that Christopher was sneezing after having been up in the attic for a while. The boy who performed community service with Christopher saw Christopher sneeze several times and use his inhaler on July 26, 2007.

Christopher returned to do community service on July 27, 2007, although he had complained to Plaintiff of being fatigued and of not wanting to go. Plaintiff saw him hauling hoses that day and observed that he looked like he was dragging. During the weekend Christopher was tired and fatigued. On Monday, July 30, he told Plaintiff he was tired and wanted to sleep. On Tuesday, July 31, Christopher woke up with an upset stomach and was coughing and wheezing. Christopher was getting ready to use his albuterol machine when he started to panic. After Plaintiff had trouble connecting with 911, Plaintiff, Christopher's grandmother and sister drove Christopher to the hospital. After struggling to breathe, Christopher went limp. When Christopher arrived at the hospital, the medical workers were unable to revive him and he was pronounced dead.

# I
## WHETHER PLAINTIFF'S CLAIMS ARE BARRED BY THE DOCTRINE OF

## ABSOLUTE IMMUNITY?

Defendant asserts that all of Plaintiff's federal and state law claims are barred under the doctrine of absolute immunity because defendant is an officer whose functions bear a close association to the judicial process. Generally, persons who perform quasi-judicial functions are entitled to absolute immunity. *See Dunham v. Wadley*, 195 F.3d 1007, 1010 (8th Cir. 1999); *Anton v. Getty*, 78 F.3d 393, 395 (8th Cir. 1996). In determining whether a defendant is entitled to absolute immunity the court employs a "functional" approach and examines the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and seeks to evaluate the effect that exposure to particular forms of liability would likely have on appropriate exercise of those functions. A defendant who seek exemption from personal liability on the basis of absolute immunity has the burden of showing that such exemption is justified by overriding considerations of public policy. *Forrester v. White*, 484 U.S. 219 (1988). Although there are "exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of the public business," *see Butzv v. Economou*, 438 U.S. 478, 507 (1978), the Supreme Court "has generally been quite sparing in its recognition of claims to absolute immunity," *Forrester v. White*, 484 U.S. at 224.

Defendant relies upon *Hansen v. Kjellsen*, 638 N.W.2d 548 (S.D. 2002), as support for her position that she is entitled to absolute immunity. In that case the South Dakota Supreme Court held that a court services officer was entitled to absolute judicial immunity when conducting a presentence investigation and preparing the report. The South Dakota Supreme Court reasoned that a sentencing court required complete and accurate information about an offender being sentenced, and that subjecting a court services officers to harassing and vexatious litigation would not promote the free flow of information to the sentencing court. Defendant was not preparing a presentence report in this case but rather, was exercising her discretion in carrying out the sentencing court's order regarding the terms of a juvenile's probation. Defendant's function was neither adjudicatory nor prosecutorial in nature so as to warrant absolute immunity. *See Ray v. Pickett*, 734 F.2d 370 (8th Cir.1984)(probation officer not entitled to absolute immunity in writing a report to secure a parole violator's warrant). The Defendant has not met her burden of showing that public policy justifies the application of absolute immunity in this case.

II

## WHETHER PLAINTIFF'S 1983 CLAIMS ARE BARRED BY THE DOCTRINE OF QUALIFIED IMMUNITY?

Defendant contends that if she is not entitled to absolute immunity, she is entitled to qualified immunity on the 42 U.S.C. § 1983 causes of action."To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). State actors, however, are "protected by qualified immunity so long as 'their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). The Eighth Circuit has established the following test to determine whether a plaintiff may overcome qualified immunity: "[T]he plaintiff must 'assert a violation of a constitutional or statutory right; that right must have been clearly established at the time of the violation; and, given the facts most favorable to the plaintiff, there must be no genuine issues of material fact as to whether a reasonable official would have known that the alleged action indeed violated that right.'" *Gregoire* at 417 (quoting *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)). The law is clearly established for the purpose of sovereign immunity if it gives the defendant officials "fair warning" that their conduct violated an individual's rights when the officials acted. *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002). In resolving qualified immunity claims, the courts no longer need first determine whether the facts alleged or shown by a plaintiff make out a violation of a constitutional right. *See Pearson v. Callahan*, 129 S.Ct. 808 (2009)(altering requirement set forth in *Saucier v. Katz*, 533 U.S. 194 (2001)).

Prison officials may be held liable under the Eighth Amendment for denying humane conditions of confinement if they know that inmates face substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it. *See Farmer v. Brennan*, 511 U.S. 825 (1994). Although Plaintiff has cited an unpublished decision in support of her position that a claim challenging the conditions of community service work falls within the jurisprudence developed around the Eighth Amendment right to be free from cruel and unusual punishment, *see Little v. Wylie*, 205 F.3d 1340, 2000 WL 178406, *2 (6th Cir. 2000) (unpublished decision), the Court has not been presented with and is unaware of reliable authority establishing the right of an unconfined person

performing community service to a cause of action under the Eighth Amendment for being denied humane conditions of confinement. For this reason the Court is granting summary judgment against Plaintiff on her Section 1983 claim which is based on the cruel and unusual punishment clause[2] of the Eighth Amendment.

Plaintiff also claims a substantive Due Process violation. With regard to a substantive Due Process violation, the Eighth Circuit has stated :

> [T]he Due Process Clause imposes a duty on state actors to protect or care for citizens in two situations: first, in custodial and other settings in which the state has limited the individuals' ability to care for themselves; and second, when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced.

*Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir.1992)(en banc), *quoted in Norfleet ex rel. Norfleet v. Arkansas Dep't of Human Services*, 989 F.2d 289, 293 (8th Cir.1993). In the case at hand the Plaintiff has presented facts that the State placed Christopher in a position of danger he would not have faced if he had not been placed on probation.

The "deliberate indifference" legal standard for a § 1983 claim for a duty to provide humane conditions of confinement under the Cruel and Unusual Punishment Clause of the Eighth Amendment is also the same legal standard duty to protect claim under the Due Process Clause of the Fourteenth Amendment. *See Vaughn v. Greene County*, 438 F.3d 845, 850 (8th Cir. 2006): *see also, City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239 (1983)(Due Process Clause of the Fourteenth Amendment is violated by deliberate indifference to pretrial detainees for whom the State has not secured a formal adjudication of guilt). Substantive due process precludes the government from engaging in conduct that shocks the conscience. *See United States v. Salerno*, 481 U.S. 739, 746 (1987). However, "rules of due process are not subject to mechanical application in unfamiliar territory, and the need to preserve the constitutional proportions of substantive due process demands an exact analysis of context and circumstances before deliberate indifference is condemned as

---

[2] Although the Court is aware that a person on probation may assert a challenge based on the Excessive Fines Clause of the Eighth Amendment, *see United States v. Bajakajian*, 524 U.S. 321(1998), the ability of a probationer who is fined or has property forfeited to raise an Excessive Fines Clause challenge does not support the position of an unconfined probationer in bringing a 1983 cause of action for inhumane conditions of confinement.

conscience shocking." *County of Sacramento v. Lewis.* 523 U.S. 833, 834 (1998). The Due Process Clause of the Fourteenth Amendment does not transform every tort committed by a state actor into a constitutional violation. *DeShaney v. Winnebago County Dept. of Social* Services, 489 U.S. 189, 202 (1989).

In a case such as this, where a Defendant acts under circumstances in which actual deliberation is practical, the conduct may shock the conscience of a federal judge only if she acted with "deliberate indifference."*Moore v. Briggs*, 381 F.3d 771, 773 (8th Cir. 2004). The Supreme Court has recognized that "conduct deliberately intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level," but whether the conscience-shocking level "is reached when culpability falls between negligence and intentional conduct is a matter for closer calls." *County of Sacramento*, 523 U.S. at 834 (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

In the context of a custodial relationship created by a child being placed in foster care the Eighth Circuit has explained:

> In the context of this custodial relationship, a substantive due process violation will be found to have occurred only if the official conduct or inaction is so egregious or outrageous that it is conscience-shocking. *Burton v. Richmond*, 370 F.3d 723, 729 (8th Cir.2004). When deliberation is practical, the officials' conduct will not be found to be conscience-shocking unless the officials acted with deliberate indifference. *Moore*, 381 F.3d at 773. Deliberate indifference will be found only if the officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and the officials actually drew that inference. *Id.* at 773-74. Mere negligence or even recklessness by a public official is not enough to shock the judicial conscience. *S.S. v. McMullen*, 225 F.3d 960, 964 (8th Cir.2000) (en banc).

*James ex rel. James v. Friend*, 458 F.3d 726, 730 (8th Cir. 2006). In a custodial setting the State's "affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *DeShaney* , 489 U.S. at 200. Although a sixteen-year-old ordered to perform 20 hours of community service does not have the same limitation placed on his freedom to act on his own behalf as does a child placed in foster care, Plaintiff has not established conscience-shocking conduct even if viewed under the standard that is applied when a child is

placed in foster care.

Defendant's conduct, although it may well have been negligent, is not conduct or inaction that is so egregious or outrageous that it is conscience-shocking. Christopher was at the lowest level on the risk scoring and contact guidelines for an adjudicated juvenile, and Plaintiff was given the opportunity to recommend community service placements for Christopher. Viewing the evidence in the light most favorable to Plaintiff, Defendant was aware that an asthmatic teenager, outfitted with a mask and gloves, was helping the janitor clean the attic for at least two hours. While facts have been presented that Defendant was "aware of facts from which an inference could be drawn that a substantial risk of serious harm existed," the evidence does not support a finding that Defendant "actually drew that inference." *See James ex rel. James v. Friend*, 458 F.3d at 730. The Court cannot find that in total, Defendant's conduct shocks the conscience. *See Avalos v. City of Glenwood*, 382 F.3d 792, 799 (8th Cir. 2004). Defendant is thus entitled to qualified immunity.

## III
## WHETHER PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED BASED UPON SOVEREIGN IMMUNITY?

In Defendant's Supplemental Brief in Support of her Motion for Summary Judgment (Doc.27) she argues that Plaintiff's state law claims, if not dismissed pursuant to absolute immunity, should be dismissed pursuant to state sovereign immunity. In South Dakota, employees of public agencies who are sued in an individual capacity are entitled to immunity when they perform discretionary functions, but not when they perform ministerial functions. *Casazza v. South Dakota*, 616 N.W.2d 872, 875 (S.D. 2000).The South Dakota Supreme Court has recognized the "difficulties inherent" in analyzing the "ministerial/discretionary dichotomy." *Hansen v. South Dakota Dept. of Transp.*, 584 N.W.2d 881, 886 (S.D. 1998). "[T]he determination as to whether an official has acted in his or her discretion or capacity, and therefore is entitled to immunity, is not subject to a fixed, invariable rule, but instead requires a discerning inquiry into whether the contributions of immunity to effective government in the particular context outweigh the perhaps recurring harm to individual citizens ... ." *Id.*

In determining whether an employee's function is discretionary or ministerial, a court is to consider the following factors:

(1) The nature and importance of the function that the officer is performing;

(2) The extent to which passing judgment on the exercise of discretion by the officer will amount necessarily to passing judgment by the court on the conduct of the coordinate branch of government;

(3) The extent to which the imposition of liability would impair the free exercise of her discretion by the officer;

(4) The extent to which the ultimate financial responsibility will fall on the officer;

(5) The likelihood that harm will result to members of the public if the action is taken;

(6) The nature and seriousness of the type of harm that may be produced; and

(7) The availability to the injured party of other remedies and other forms of relief.

*National Bank of South Dakota v. Leir*, 325 N.W.2d 845, 848 (S.D. 1982)(action against social workers for their alleged negligent placement and supervision of minors in a foster home was not barred by sovereign immunity).

The South Dakota Supreme Court has pointed out that in determining whether or not an act is ministerial, the courts "must weigh the consequence immunity has on effective government with the potential to harm individuals." *King ex rel. King v. Landguth*, 726 N.W.2d 603, 608 (S.D. 2007). In making this inquiry, the courts examine "the nature of the official's duties, the extent to which the acts involve policy making or the exercise of professional expertise and judgment, and the likely consequences of withholding immunity." *Wulf v. Senst*, 669 N.W.2d 135, 143 (S.D. 2003). Upon reflection, the Court comes to the conclusion that the acts of the Defendant are discretionary rather than ministerial. As is recognized by the South Dakota Supreme Court, that sometimes is not an easy distinction to make. Here, the Defendant as a State Court Services Officer had to supervise the performance of 20 hours of court-ordered community service by the decedent minor. What would properly comprise that community service by the minor was something for the exercise of professional expertise and judgment by the Defendant Court Services Officer subject to the limitations of the law. Those decisions do not involve policy making but they were surely the exercise of professional expertise and judgment.

Many things that are done by a court services officer do require the exercise of professional expertise and judgment and other types of their work would be ministerial in nature so the inquiry is

a fact specific inquiry as to what the acts in question involve. The acts here involve the Defendant Court Services Officer using her discretion and professional judgment. The carrying out of the Court-ordered supervision here is a typical function to be carried out by a trained court services worker. The likely consequence of conferring no immunity for this portion of court service officers' duties would expose them to litigation that would be expensive for them to personally defend even if ultimately no damages were awarded personally against them. The nature of supervision of a defendant by a Court Services Officer, given the difficulties that often arise, would sometimes invite litigation, especially since no action could be brought against the sentencing judge. A person under supervision is not normally as dependent for their health and safety upon the acts of a court services officer as is somebody who is incarcerated and under the complete control of a jailer or prison personnel. Accordingly, the conference of immunity in this situation has less potential to harm individuals but yet is necessary for effective government.

In carrying out the general requirements of a dispositional order of a circuit court judge, abiding by the general requirements of S.D.C.L. § 26-8C-7(3),[3] and selecting and placing a juvenile in a particular type of community service, a court services officer by necessity employs a substantial amount of discretion and the use of professional expertise and judgment. Some other acts and

---

[3]S.D.C.L. § 26-8C-7 provides in part:
> If a child has been adjudicated as a delinquent child, the court shall enter a decree of disposition according to the least restrictive alternative available in keeping with the best interests of the child. The decree shall contain one or more of the following alternatives:
>
> . . .
>
> (3) The court may place the child on probation under the supervision of a court services officer or another designated individual. The child may be required as a condition of probation to report for assignment to a supervised work program, provided the child is not deprived of the schooling that is appropriate for the child's age, needs, and specific rehabilitative goals. The supervised work program <u>shall be of a constructive nature designed to promote rehabilitation, appropriate to the age level and physical ability of the child, and shall be combined with counseling by the court services officer or other guidance personnel</u>. The supervised work program assignment shall be made for a period of time consistent with the child's best interests, but for not more than ninety days[.]

(Emphasis added).

functions of a probation officer could be ministerial in nature, but these are not. Granting immunity to a court services officer acting in her capacity under the facts of this case is critical to the effective functioning of the judicial system in implementing sentences of probation. For this reason the Court is granting Defendant's motion for summary judgment on the state claims on the basis of sovereign immunity.

# IV
## WHETHER DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS OF A BYSTANDER?

Defendant contends that in addition to being entitled to summary judgment on the basis of sovereign immunity she is entitled to summary judgment on Plaintiff's cause of action for negligent infliction of emotional distress because Plaintiff was not within the zone of danger required by South Dakota law. Defendant relies upon the holding in *Nielson v. AT & T Corp.*, 597 N.W.2d 434 (S.D. 1999). The *Nielson* case involved a mother of a horse rider who was riding horse with her daughter when her daughter's horse tripped in a cable trench, somersaulted and landed on the daughter. The mother witnessed the fatal accident. In reversing summary judgment against the mother in her cause of action for negligent infliction of emotional distress, the South Dakota Supreme Court defined the requirements for negligent infliction of emotional distress of a bystander as follows:

> [W]e hold that South Dakota law recognizes a bystander's claim for negligent infliction of emotional distress caused by contemporaneous observation of the serious injury or death of a third party with whom the bystander has a close relationship. The bystander must be within the zone of danger. However, the emotional distress suffered may be caused by fear for the third person and need not be caused by the bystander's fear for his or her own safety. The negligently inflicted emotional distress must be accompanied with physical manifestations.

597 N.W.2d at 441. Although this holding was restricted to the facts of the *Nielson* case the Court concludes that the Supreme Court's analysis of zone of danger precludes Plaintiff from recovering under her bystander negligent infliction of emotional distress claim. Plaintiff was not present when the alleged negligent act of causing Christopher to be in the dust-filled attic occurred. Witnessing his

12

death five days after Christopher was in the attic is too far removed to satisfy South Dakota's zone of danger requirement. For this reason, the Court is granting Defendant's motion for summary judgment on Plaintiff's bystander negligent infliction of emotional distress claim. Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc.20) is granted with regard to all of Plaintiff's State causes of action and Plaintiff's 1983 causes of action based on the Eighth Amendment and Substantive Due Process.

Dated this 17th day of February, 2010.

BY THE COURT:

Lawrence L. Piersol
Unites States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: Colleen Schulte
(SEAL)    DEPUTY